IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 18-cr-20312-MGC

UNITED STATES OF AMERICA,

    plaintiff,

vs.

FRANK ROBERTO CHATBURN RIPALDA
and
JOSE LARREA
_____/

**FRANK CHATBURN'S MOTION
FOR RELEASE ON BAIL PENDING TRIAL**

Frank Chatburn respectfully requests pretrial release on bail under 18 U.S.C. § 3142. The facts and the law show that Mr. Chatburn is not a flight risk[1] and that there are conditions of bond that will reasonably ensure his presence through trial.

## INTRODUCTION

On April 19, 2018, a sealed indictment was issued in this District against Frank Chatburn and one other individual. On April 25, 2018, Frank Chatburn was arrested in Miami, Florida.

Mr. Chatburn, who is 40 years old, is a citizen of the United States and has lived in the United States for eighteen years. He came to the United States in the year 2000, when he was around 22 to study at FAU, where he received an undergraduate degree in business. He has lived in, and been involved in business activities, in South Florida since his graduation from college and has developed a significant clientele for financial and real estate services by building a good reputation for honest and competent work.

---

[1] There is, of course, no physical danger to the community suggested by the government allegations of purely white-collar crime.

He married Annie de la Rosa, a native-born United States citizen who hails from Oregon. The couple has bought and now owns real property in Miami-Dade County--including their family residence on Miami Beach and a condominium in Coconut Grove. Mr. and Mrs. Chatburn are prepared to pledge all their equity in those properties, which is more than $3,000,000, in support of a bond. Mr. Chatburn and his brother, Mark Chatburn, also are willing to use liquid personal assets to post a reasonable surety bond above and beyond the $3,000,000 of real estate assets he is prepared to pledge.

As to risk of flight, Mr. Chatburn is aware and has been warned by counsel that flight would be illegal and would subject him to potential penalties--including prison time--beyond what he faces from the indictment in this case. He also knows that flight would cause the loss of the assets he posts and pledges, which are essentially all the assets he, his wife and his brother own.

Moreover, Mr. Chatburn has not acted like someone likely or ready to "fugitate," in the words of federal law enforcement. He has known that he was under federal criminal investigation for more than two years and has made no attempt to flee or evade the authority of the United States government. Quite the contrary, in that time he has acted like a man rooted in this community, starting a new business involving distribution of food products in Latin communities in the U.S., an activity very much inconsistent with an intent or plan to flee the jurisdiction if the investigation he was aware of turned against him.

Mr. Chatburn, a long-time resident of South Florida, has been involved in significant legitimate business activities entirely separate from the limited transactions alleged to have been illegal. The existence of this indictment inevitably harms his good reputation for honesty and integrity--established over many years of business life here--and is already having a crippling

effect on his business and personal life. Mr. Chatburn well appreciates that his only prospect for clearing his name and for overcoming the disastrous consequences of this criminal case is to stay and confront the charges against him. For that reason, he will not run.

The government takes the position that Mr. Chatburn is a risk of flight principally because he is a dual citizen of the United States and Ecuador. That theory is not persuasive because of the particulars of the case made out by the government. Mr. Chatburn is alleged to have aided and abetted two Ecuadoreans in their bribery scheme. Both of those men have been prosecuted and convicted in Ecuador. The defense is aware that Ecuadorean prosecutors have conducted investigative inquiries about Mr. Chatburn related to these men. Moreover, Ecuador and the United States have an extradition treaty that would subject Mr. Chatburn to a real risk of being returned to this district to face not only this indictment, but also another for bail jumping if he fled. It would make no sense for Mr. Chatburn to jump from the frying pan in the Southern District of Florida into a fire in Ecuador.

Mr. Chatburn has made his entire adult life in South Florida. At age 40, he will not abandon the life he has made here but instead is motivated to confront this case and stay here for trial. Given that Mr. Chatburn has strong ties to this community, that he would lose everything he has worked for here if he fled, and that he would still face high risk of prosecution in or extradition from Ecuador, he cannot, in a reasonable use of the words, be considered a flight risk and an appropriate bond can be fashioned that will assure his presence. We propose, among other conditions that the Court will determine, a personal surety by close family here in Miami who will take custody and supervise his compliance with bond conditions, a curfew, and electronic monitoring.

# ARGUMENT

1. **Frank Chatburn's Background**

As discussed above, Frank Chatburn has lived his entire adult life in South Florida—he studied here, he worked here, and he married here. He owns real property here and nowhere else in the world. He owns companies here and nowhere else in the world. He maintains bank accounts here and nowhere else in the world.

2. **The Indictment**

The five-count indictment against Mr. Chatburn and Jose Larrea alleges one criminal scheme to aid and abet and launder monies related to $3.27 million in bribes paid by Galileo Energy, S.A. to PetroEcuador in exchange for $27.8 million in contracts granted to it by PetroEcuador. The government alleges that in 2012, Mr. Chatburn helped the owner of Galileo establish a Panamanian company, Denfield, to receive the profits from the bribe scheme and then directed the movement of "funds into and out of the Cayman Islands account of [unnamed] Intermediary Company" (Indictment at 2) to bank accounts "in the name of a shell company of PetroEcuador Official" (*id*. at 9), "in the name of an individual, as requested by PetroEcuador Official" (*id*. at 6), and "in the name of law firm based in Miami, Florida." *Id*. at 10.

Count I alleges a conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"); count II alleges a conspiracy to launder money; count III alleges that Mr. Chatburn's alleged transfer of $150,000 to PetroEcuador's bank account in Panama constituted a violation of the FCPA. Counts IV and V allege money laundering against Mr. Chatburn for identified transfers.

3. **Conditions of Release can be Fashioned which will Reasonably Assure Mr. Chatburn's Appearance**

The government is seeking Mr. Chatburn's detention under 18 U.S.C. § 3142. However, in *United States v. Orta*, 760 F. 2d 887, 892 (8th Cir. 1985), the court noted that "[t]he structure

of the [bail] statute mandates every form of release to be considered before detention may be imposed. That structure cannot be altered by building a guarantee requirement atop the legal criterion erected to evaluate release conditions in individual cases." *See also United States v. Tortora*, 922 F. 2d 880, 884 (1st Cir. 1990) (holding that "'reasonably assure' under the Bail Reform Act is not synonymous with 'guarantee.'")

As discussed below, consideration of the enumerated factors in Section 3142(g) shows that Mr. Chatburn is, in fact, not a flight risk, and that an appropriate combination of terms and conditions, as described in subsection (c), can be imposed which will be sufficient to reasonably assure his appearance at trial. Indeed, for the very reasons of his significant ties to the community and his urgent need to address and undo the substantial harm of the indictment, Mr. Chatburn will not flee but will remain to stand trial.

The Bail Reform Act establishes a presumption in favor of pretrial release. 18 U.S.C. § 3142 (a)-(c); *see also United States v. Salerno*, 481 U.S. 739, 754-755 (1987); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1261 (S.D. Fla. 2005). "The policy of the Act 'is to permit release under the least restrictive condition[s] compatible with assuring the future appearance of the defendant[s].'" *United States v. Price*, 733 F. 2d 1526, 1528 (11th Cir. 1985). Thus, "'[o]nly in rare circumstances should release be denied,' and [d]oubts regarding the propriety of release should be resolved in favor of defendants." *United States v. Kaplowitz*, 2014 WL 2155231 (S.D. Fla. 2014).

In determining whether detention of a defendant pending trial is appropriate, the court must consider: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendants; and (4) the

5

nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

    A.    *Nature and Circumstances of the Offenses Charged*

The alleged crimes carry heavy sentences of approximately eight and a half to ten years.

    B.    *Strength of the Evidence*

The strength of the evidence against Mr. Chatburn can be best addressed after consideration of the Government's proffer at the detention hearing.

    C.    *Mr. Chatburn's History and Character*

As discussed above, Mr. Chatburn's entire adult life is centered in Miami, Florida. The core of his family, including his wife and his brother, live in Miami. He has no previous criminal record. Prior to this incident, Mr. Chatburn has been an exemplary member of the community.

    D.    *Nature and Seriousness of the Danger to Any Person or the Community\*

There is no danger to persons or the community.

## **CONCLUSION**

While Mr. Chatburn faces serious charges, he has known he was under investigation and faced the self-same risk for more than two years. Nothing about that danger caused him to flee or take steps to do so. To the contrary, despite knowing that he could well end up in his current predicament, Mr. Chatburn has continued to live his life here in Miami-Dade County, conducting his business and enjoying his family. He fully intends to face this case and defend himself as he has all along. He respectfully asks that the Court set a bail that is not excessive as is his right and as a common sense review of the facts and the law require.

Dated: April 26, 2018.

        Respectfully submitted,

        RIVERO MESTRE LLP
        *Attorneys for Frank Chatburn*
        2525 Ponce de Leon Blvd., Suite 1000
        Miami, Florida 33134
        Telephone: (305) 445-2500
        Facsimile: (305) 445-2505

By:    <u>/s/ Andrés Rivero</u>
        Andrés Rivero
        Florida Bar No. 613819
        arivero@riveromestre.com
        Kirk Villalón
        Florida Bar No. 125157
        kvillalon@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on April 26, 2018, I electronically filed this document with the Clerk of the Court using CM/ECF.

s/ Andrés Rivero
Andrés Rivero
