UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20312-CR-COOKE(s)

UNITED STATES OF AMERICA,

 *Plaintiff*,

v.

FRANK CHATBURN RIPALDA,

 *Defendant*.

_____/

## MOTION TO SUPPRESS RECORDINGS

Frank Chatburn respectfully moves this Court, under Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, 28 U.S.C. § 530B(a), and the Fifth and Sixth Amendments to the United States Constitution, for an order suppressing all evidence, direct and derivative, of the recordings made of conversations between Mr. Chatburn and Mr. Ramiro Andres Luque Flores ("IRS-CI cooperating witness") as a cooperator for the government while Mr. Chatburn was represented by legal counsel. Mr. Chatburn further moves for an evidentiary hearing on this motion.

### INTRODUCTION

The government has produced tape recordings in discovery that consist of conversations between Mr. Chatburn and the IRS-CI cooperating witness that took place in Florida in 2017. The IRS-CI cooperating witness made these recordings

without Mr. Chatburn's knowledge as part of his cooperation. During this time, the government was aware that attorney Andres Rivero represented Mr. Chatburn. As such, the IRS-CI cooperating witness's recordings violated Florida's Rule of Professional Conduct, Rule 4-4.2(a) ("Florida's No-Contact Rule"), and 28 U.S.C. § 530B(a) ("the Citizen's Protection Act").[1]

## BACKGROUND

The indictment in this case charges Mr. Chatburn with conspiracy to commit money laundering and conspiracy to commit violations of the Foreign Corrupt Practices Act ("FCPA"), as well as substantive counts of money laundering and violations of the FCPA.[2] (D.E. 3).

On December 21, 2016, Mr. Chatburn sought legal advice and representation from attorney Rivero because it came to Mr. Chatburn's attention that a federal agent was asking questions about Mr. Chatburn in connection with a money laundering investigation stemming out of a public corruptions case in Ecuador. *See* Exhibit 1, Declaration of Andres Rivero, Esq. Around that same time, Special Agent Jeffrey LaMirand was investigating Biscayne Capital International, LLC ("BCI") where Mr. Chatburn worked as a financial advisor. *Id.* at ¶¶ 3-4. Attorney Rivero came in

---

[1] McDade Act, Pub. L. No. 105-277, 112 Stat. 268, § 801 (1998) ("Ethical Standards for Federal Prosecutors") (effective April 19, 1999).

[2] On December 14, 2018, the government superseded the indictment in this case. (D.E. 105).

contact with Special Agent LaMirand as part of attorney Rivero's representation of certain financial advisors working at Biscayne Capital International, LLC. *Id.*

On February 6, 2017, the government served Mr. Chatburn with a grand jury subpoena requiring Mr. Chatburn to personally appear before the grand jury and provide records. *See* Exhibit 3, Grand Jury Subpoena served on Mr. Chatburn (filed separately *ex-parte* and under seal). The subpoena demanded information about a number of entities related to the indictment in Mr. Chatburn's case. *Id.* Department of Justice ("DOJ") attorneys issued the grand jury subpoena. *Id.* at 2. Mr. Chatburn engaged attorney Rivero to represent him in connection with the grand jury subpoena as well.[3] *See* Exhibit 1 at ¶ 6. Shortly thereafter, attorney Rivero contacted the DOJ attorneys to inform them that he represented Mr. Chatburn. *Id.* On March 16, 2017, attorney Rivero, in his capacity as Mr. Chatburn's legal counsel, had a conference call with one of the DOJ attorneys and some of her colleagues in relation to the grand jury subpoena. *Id.* at ¶ 8.

The IRS-CI cooperating witness is expected to testify against Mr. Chatburn at trial. *See* D.E. 50, Detention Hr'g Tr. 4/27/2018 at 9:21-25; *U.S. v. Ramiro Andres Luque Flores*, Case No. 17-537-CBA (E.D.N.Y.), Joint Motion to Continue Status

---

[3] At the time of Mr. Chatburn's detention hearing on April 27, 2018, attorney Rivero represented to the court that he had been Mr. Chatburn's attorney for over 25 months. *See* D.E. 50, Detention Hr'g Tr. 4/27/2018 at 11:15-17.

Conference at D.E. 17. The IRS-CI cooperating witness began surreptitiously recording his conversations with Mr. Chatburn in April 2017. According to the government's Affidavit in Support of an Application for a Search Warrant, the IRS-CI cooperating witness became an "IRS-CI cooperating witness" on July 18, 2017. *See* Exhibit 4, Application in Support of Search Warrant at 6 ¶ 15 (filed separately under seal).

On October 6, 2017, the IRS-CI cooperating witness pled guilty to an Information charging him with conspiracy to violate the FCPA and to commit money laundering. *See United States v. Ramiro Andres Luque Flores*, Case No. 17-537-CBA (E.D.N.Y.), Minute Entry for proceedings held before Magistrate Judge Sanket J. Bulsara at D.E. 2, 6.

The IRS-CI cooperating witness continued recording conversations between him and Mr. Chatburn through December 4, 2017.

## ARGUMENT

### THE GOVERNMENT KNOWINGLY INITIATED RECORDINGS OF A REPRESENTED PERSON

A government lawyer – just as any other lawyer – may not communicate with a represented person about the subject matter of the representation. In Florida, a federal government lawyer communicating with a represented person about the subject matter of the representation violates Florida's No-Contact Rule and the Citizen's Protection Act. Florida's No-Contact Rule: (i) requires the consent of

counsel to contact a represented person, (ii) admits of no express exception other than for contacts authorized to serve process, and (iii) is not waivable by the client. Fla. Bar. R. 4-4.2 & cmt.

Although the applicability of Florida's No-Contact Rule to federal government lawyers has been the subject of much debate for the last three decades, the Florida Bar and Congress made it clear that the Rule unquestionably applies to federal prosecutors. In 1990, the Florida State Bar Association Committee on Professional Ethics issued Opinion Number 90-4 addressing a 1989 memorandum issued by the United States Attorney General expressing the belief that the equivalent rule to Florida's No-Contact Rule in the ABA Model Code of Professional Responsibility should not be read in an "expansive" manner. Fla. Ethics Op. 90-4, 1990 WL 446959, at *1 (July 15, 1990). The Opinion specifically addressed the memorandum's belief that "covert contacts . . . with a suspect after the suspect has retained counsel" were excepted from the parallel ABA Model Code of Professional Responsibility because they are "authorized by law." *Id.* The Opinion makes clear, however, that covert contacts are not excepted from Florida's No-Contact Rule because (1) "[t]he Florida rule governs communication with 'a person' represented by counsel, while the ABA rule applies to communication with a represented 'party'" and, (2) "the Florida rule does not contain the 'or is authorized by law' exception that is found in the ABA rule." *Id.* at *2. Accordingly, the Florida

State Bar Association Committee on Professional Ethics clarified with its 1990 Opinion that Florida's No-Contact Rule prohibits federal prosecutors from covertly contacting represented persons pre-indictment.

If there was any remaining doubt that Florida's No-Contact Rule applies to federal prosecutors, Congress cleared up that doubt through its October 21, 1998 enactment of the Citizen's Protection Act. The Citizen's Protection Act requires that "[a]n attorney for the Government shall be subject to State laws and rules . . . governing attorneys in each State where such attorney engages in that attorney's duties to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). In this case, Florida's ethics rules *is* the federal substantive law enacted by Congress that is binding upon the Executive Branch. In effect, the Citizen's Protection Act makes Florida's No-Contact Rule applicable to federal prosecutors as a matter of federal law.

DOJ's attempt to repeal the Citizen's Protection Act before it went into effect, in part on the basis that it would interfere with covert operations, was unsuccessful. Five months after the Citizen's Protection Act was enacted, but prior to the Act's effective date of April 19, 1999, there was a hearing before the Subcommittee on Criminal Justice Oversight regarding the effect of state ethics rules on federal law enforcement that specifically focused on the Citizen's Protection Act. *See* Exhibit 2, "The Effect of State Ethics Rules on Federal Law Enforcement," 106 Cong. 1st Sess.

Report No. 255 (March 24, 1999).  The then-Deputy Attorney General of the United States, Eric Holder, and the then-U.S. Attorney for the Northern District of Florida, Michael Patterson, testified that Florida's No-Contact Rule prohibited federal prosecutors in Florida from contacting known represented persons prior to their indictment, even if part of an undercover operation. *Id.* Referring to Florida Ethics Opinion 90-4, then-Deputy Attorney General Eric Holder testified:

> First, with regard to undercover operations, they are critical to many major investigations, including the investigation of major drug trafficking rings, terrorist groups, and traditional organized crime. *The Committee on Professional Ethics of the Florida State Bar Association, however, has opined that under the Florida version of the contacts rule, attorneys and agents working with the attorneys may not communicate with anyone who claims to have a lawyer with respect to a particular matter.*

Exhibit 2 at 10 (emphasis added). His written statement further explained:

> The Committee on Professional Ethics of the Florida State Bar Association, however, has issued an opinion that leaves this basic law enforcement technique in doubt. Most state contacts rules have an exception for contacts "authorized by law." Florida's rule has no such exception, and the Florida state bar apparently considers the rule to be absolute – attorneys and agents working for attorneys may not communicate with any person who claims to have a lawyer with respect to a particular matter. *Accordingly, the bar opined that federal prosecutors are not permitted to conduct undercover operations against a target who is represented by counsel.* Fl. Eth. Op. 90-4 (1990 WL 446959) (Fla. St. Bar Assn.).

Exhibit 2 at 27-28 (emphasis added). Michael Patterson, the then-U.S. Attorney for the Northern District of Florida, warned:

> Further compounding the problem for Federal prosecutors in the fact that they would be subjected to very restrictive ethical covenants regarding contacts with represented persons in Florida. *Florida Bar Rule 4-4.2, in essence, makes it unethical to communicate with a represented person without the consent of the individual's lawyer.* On its facts, this is a very reasonable rule. However, when applied to the public necessity for undercover investigations, it has the very real potential to substantially impact on the public safety.

Exhibit 2 at 13 (emphasis added). Senior DOJ representatives nineteen years ago gave sworn admissions that Florida's No-Contact Rule bars pre-indictment contacts with represented persons, which is precisely what happened here.

Since the passage of the Citizen's Protection Act on October 21, 1998, federal prosecutors have been bound by federal law to abide by the same ethical standards, including the no-contact rules, of the States in which they practice "to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). *See, e.g., United States v. Koerber,* 966 F. Supp. 2d 1207 (D. Utah 2013) (28 U.S.C. § 530B imposes statutory and due process duties upon prosecutors and their agents to comply with state ethics rules). Congress rejected DOJ's effort to repeal the Citizen's Protection Act nineteen years ago, and it remains the federal law today. Thus, in this federal investigation taking place in Florida, the prosecution team, as a matter of federal law, was obligated to comply with Florida's No-Contact Rule.

Moreover, the U.S. Attorney's Manual informs prosecutors that they are bound by applicable state ethics rules in communicating with represented parties.

*See* U.S. Attorney's Manual 9-13.200;[4] *see also Koerber,* 966 F. Supp. 2d at 1243 (citing and quoting 9 U.S.A.M. §§ 13.296-13.297 (2013)). Thus, the incorporation of "State laws and rules" in the Citizen's Protection Act as well as the U.S. Attorney's Manual means that government attorneys must follow the State laws and rules of the State in which they practice so as not to violate the due process rights of the people they investigate and/or prosecute. In *Koerber*, the court found that the defendant was denied due process under the Fifth Amendment when government agents violated Utah's No-Contact Rule by interviewing the defendant knowing that he was represented by counsel without first obtaining his counsel's consent. The court explained that "the Government's failure to comply with its own internal agency policies can constitute a denial of due process if those policies are publicly known and intended to protect citizens' constitutional rights." *Id.* at 1234 (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). A defendant "'under investigation . . . is legally entitled to insist upon the observance of rules' promulgated by an executive or legislative body for his protection." *Id.* (citing *Bridges v. Wixon*, 326 U.S. 135, 153 (1945)).

To the extent that Mr. Chatburn was in fact a target of the DOJ, he also had a Sixth Amendment right to have counsel present during an interrogation. *See United*

---

[4]   The   U.S.   Attorney's   Manual   is   available   online   at https://www.justice.gov/archives/usam/archives/usam-9-13000-obtaining-evidence#9-13.200.

*States v. Burgess*, 141 F.3d 1160 at *1 (4th Cir. March 30, 1998) (explaining that the onset of a criminal proceeding is determined by looking at "whether authorities have committed themselves to prosecute, signifying the point at which the 'adverse positions of government and defendant have solidified. . . .") (citing *Moore v. Illinois*, 434 U.S. 220 (1977) and *Kirby v. Illinois*, 406 U.S. 682 (1972)); *see also United States v. Rosen*, 487 F. Supp. 2d 721, 732-33 (E.D. Va. 2007) (explaining that a Sixth Amendment right to counsel may attach in circumstances where "the government delayed charging for the purpose of conducting some pre-trial investigation, such as a lineup or an interrogation, without defense counsel when counsel would otherwise be required for any waiver of a defendant's right to be effective"); *United States v. Bowman*, 277 F. Supp. 2d 1239, 1244 (N.D. Ala. 2003), *vacated on other grounds*, 2003 WL 23272667 (Sept. 12, 2003) (explaining that the government and the defendants were engaged in an adversary judicial proceeding at the time that the confidential informant recorded the defendants because that's when the government's role "shifted from investigation to accusation").

The government knew that attorney Rivero represented Mr. Chatburn during the time that the IRS-CI cooperating witness was recording Mr. Chatburn without attorney Rivero's consent. Not only was IRS Special Agent LaMirand aware in 2016 that attorney Rivero was undertaking the representation of financial advisors working for Biscayne Capital International, LLC, such as Mr. Chatburn, several DOJ

attorneys became aware at least as early as February 2017 that attorney Rivero was representing Mr. Chatburn in this federal investigation when attorney Rivero advised them that he was handling the grand jury subpoena served on Mr. Chatburn. *See* Exhibit 1 at ¶¶ 3-6. Despite knowing that Mr. Chatburn retained attorney Rivero to represent him in a grand jury subpoena covering the same subject matter as this case, Special Agent LaMirand and DOJ attorneys authorized the IRS-CI cooperating witness to record conversations with Mr. Chatburn that have been produced as discovery in this case. These recordings were made in violation of Florida's No-Contact Rule, the Citizen's Protection Act, and the Constitution.

Federal Rule of Evidence 402 provides that relevant evidence can be excluded when the Constitution or a federal statute provides for exclusion. Fed. R. Evid. 402. A pre-indictment violation of Florida's No-Contact Rule violates Mr. Chatburn's Fifth and Sixth Amendment rights as well as the Citizen's Protection Act and thus warrants suppression. Suppression and disqualification are appropriate remedies for these violations. *See United States v. Koerber*, 966 F. Supp. 2d 1207 (D. Utah 2013) (pre-indictment violation of Utah no-contact rule violates Fifth Amendment and warrants suppression); *United States v. Bowman*, 277 F. Supp. 2d 1239 (N.D. Ala. 2003) (pre-indictment violation of Alabama no-contact rule violates Sixth Amendment and warrants suppression), *vacated on other grounds*, 2003 WL 23272667 (Sept. 12, 2003); *Curtis v. State Farm Fire &*

*Cas. Co.,* 617 Fed. App'x 517, 519 (6th Cir. 2015) (violations of the "no-contact rule can result in disqualification of the offending lawyer.") (quoting 2 Geoffrey C. Hazard, Jr. et al., The Law of Lawyering § 41.02 at 41-4 (4th ed. 2015)); *Bedoya v. Aventura Limousine & Transportation Service, Inc.*, 861 F. Supp. 2d 1346, 1371 (S.D. Fla. 2012) (disqualifying law firm for Rule 4-4.2 violation); *Camden v. State*, 910 F. Supp. 1115, 1123 (D. Md. 1996) (suppression of affidavit and witness's testimony insufficient to remedy violation of no-contact rule; disqualification of counsel was necessary). *Cf. United States v. Lowery*, 166 F.3d 1119, 1124-25 (11th Cir. 1999) (concluding that Federal Rule of Evidence 402 does not provide for the exclusion of evidence based on a state ethics rule but overlooking the due process foundation underlying the Citizen's Protection Act's incorporation of the no-contacts rule as explained in *Koerber*, 966 F. Supp. 2d at 1214).

## CONCLUSION

The recordings in this case should be suppressed.

Undersigned counsel has conferred with government counsel with respect to this motion. Government counsel has advised that they object to the motion.

The foregoing document was served via CM/ECF on the date stamped above.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

By:   /s/  *Rossana Arteaga-Gomez*
**HOWARD SREBNICK, ESQ.**
E-mail: HSrebnick@RoyBlack.com
Fla. Bar No. 0919063
**ROSSANA ARTEAGA-GOMEZ, ESQ.**
E-mail: RArteaga-Gomez@RoyBlack.com
Fla. Bar No. 0014932