**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 18-20312-CR-COOKE/GOODMAN**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRANK CHATBURN RIPALDA, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION
TO DISMISS COUNT 6 OF THE SUPERSEDING INDICTMENT**

Defendant Frank Chatburn filed a motion to dismiss the money laundering count because he says the statute of limitations expired before he was indicted on the charge, and that this therefore prohibits the Government from prosecuting him on the charge. [ECF No. 126]. U.S. District Judge Marcia G. Cooke referred the motion to the Undersigned. [ECF No. 134]. The Government filed an opposition response [ECF No. 141] and Chatburn filed a reply [ECF No. 148]. The Undersigned held a hearing on the motion on June 25, 2019. [ECF No. 151].

The money laundering count (involving a $700,000 wire transfer made from a Cayman Islands account to a U.S. bank account in Miami) was initially designated as Count 4 of the Indictment. [ECF No. 1, p. 10]. Chatburn's motion focused on that Count,

but the grand jury had by then already returned a Superseding Indictment [ECF No. 105, p. 12] which shifted the $700,000 money laundering allegation to Count 6. Therefore, Chatburn is actually seeking to dismiss Count 6 and his reply in support of his motion to dismiss unequivocally explains that he is in fact targeting Count 6. This procedural anomaly is not controversial in any way, and all parties recognize and accept the notion that Chatburn's motion seeks to dismiss Count 6 on statute of limitations grounds.

The Undersigned **respectfully recommends** that Judge Cooke **deny** Chatburn's motion because another district court judge suspended the statute of limitations pursuant to an application the Government submitted under 18 U.S.C. § 3292. As outlined below, the district court judge issued the tolling order after reviewing the government's *ex parte* application and a sworn declaration from an FBI agent which explained the pendency of an official request to the Republic of Panama for bank account and corporate records. The Undersigned rejects as not persuasive Chatburn's arguments that (1) the records were not relevant to the money laundering offense, (2) the Government did not need the evidence because it already had evidence from the Cayman Islands, (3) the agent's declaration was overly conclusory, and (4) an evidentiary hearing is required.

I.   **Factual Background**

On October 13, 2017, the Government, through the Department of Justice's Office of International Affairs ("OIA"), submitted an official request to the Republic of Panama

under the United Nations Convention Against Corruption ("UNCAC"), seeking bank account records and corporate records for companies the Defendant used as part of the bribery and money laundering schemes for which he is charged.

On or about December 21, 2017, the Government applied *ex parte* to the district court in the Southern District of Florida for a suspension of the statute of limitations pursuant to § 3292 based on its request to Panama. [*See* ECF No. 133-1 (filed under seal)]. This application included an FBI special agent's declaration about the matters under investigation and a copy of the Government's official request to Panama. *Id*.

In the sworn declaration, the agent stated that the request to Panama was still pending and the Government had not yet received all of the requested evidence. [ECF No. 133-1, p. 11]. After reviewing the application package, the district court found by a preponderance of the evidence that it reasonably appeared that evidence of the offenses under investigation was located in Panama, and that the Government had made an official request to Panama. [ECF No. 142-1 (filed under seal)]. On the same day, the district court granted the Government's application and ordered "that the running of the statute of limitations for the offenses set forth in the government's *Ex Parte* Application is hereby SUSPENDED for the period authorized by 18 U.S.C. § 3292." [ECF No. 142-1, p. 4].

The offenses referenced in the district court's order included the money

laundering offenses charged in the indictments in this case, including Count 4 of the original indictment (i.e., Count 6 of the Superseding Indictment).

On or about February 9, 2018, OIA received Panama's response to the Government's official request and OIA forwarded this response to the prosecution team on or about February 12, 2018. [*See* ECF No. 142-2 (filed under seal)].

On or about April 19, 2018, a grand jury sitting in Miami returned an indictment charging Chatburn with several crimes, including a substantive money laundering charge in connection with a transaction that occurred on or about February 27, 2013 (formerly Count 4 but now Count 6). [ECF No. 3]. On December 13, 2018, a grand jury sitting in Miami returned a superseding indictment against Chatburn. [ECF No. 105]. As noted above, the same money laundering charge that was Count 4 in the original indictment became Count 6 in the superseding indictment.

**II.     Positions Urged by the Parties**

Noting that the wire transfer at issue was made on February 27, 2013, Chatburn points out that the applicable five-year statute of limitations[1] expired on February 27, 2018, but that the indictment was not issued until April 19, 2018, almost two months after the limitations period expired. He recognizes that the Government filed a motion on

---

[1]     18 U.S.C. § 3282(a), which provides that an indictment for any offense other than a capital offense must, unless tolled, be returned "within five years next after such offense shall have been committed."

4

December 28, 2017 to suspend the statute of limitations under 18 U.S.C. § 3292 but argues that the statute does not support tolling because the evidence relating to the money laundering count would presumably be in the United States or the Cayman Islands, not Panama. Therefore, he contends, a Government request for records from Panama is not relevant to a money laundering count involving a transfer from the Cayman Islands to the United States because it does not relate to the charged offense.

At the time he filed the motion, Chatburn explained that he did not see any materials in the voluminous discovery showing that any documents were received at all from Panama after the United States filed its motion to suspend the statute of limitations. After receiving the Government's response (which pointed out that the documents had in fact been produced), Chatburn effectively abandoned that argument.

However, he still argued that 18 U.S.C. § 3292 cannot suspend the statute of limitations "if the government already has in its possession the documents requested" under the Mutual Legal Assistance Treaty ("MLAT"). [ECF No. 126, p. 3]. He also challenges the agent's declaration because he contends that it "provides no details as to what remains to be received from Panama." [ECF No. 126, p. 4].

And he still argues (in his reply) that "evidence pertaining to this wire transfer cannot reasonably appear to be in Panama." [ECF No. 148, p. 3]. Thus, he argues, an MLAT request to the *Cayman Islands* may have tolled the statute (for a Cayman Islands to

5

the United States wire transfer) but not a request to *Panama*.

In its opposition response, the Government emphasized that the tolling statute does not require that the evidence sought in the foreign country be pivotal or essential to the indictment; it merely must be "evidence of an offense." [ECF No. 141, p. 7].

Moreover, the Government highlighted the fact that the statute does not require it to lack the ability to indict the defendant on the offense at issue without obtaining the records requested. Phrased differently, the statute permits the Government to obtain additional evidence of the offense from a foreign country to supplement evidence it already has, even if the current evidence is adequate to support an indictment.

The Government says the Panamanian bank records it requested (and then later obtained) are relevant to the money laundering offense because they provide circumstantial evidence of the money laundering charge. It notes that the Panamanian records demonstrate that on two occasions before the transfer at issue in Count 6 the defendant sent bribe payments from the same Cayman Islands account to a Panama account for the benefit of PetroEcuador officials. This, the Government contends, is circumstantial evidence that the transfer in Count 6 "was not a mistake." [ECF No. 141, p. 9].

In connection with that argument, the Government also stressed that the statute does not limit evidence to only direct evidence and similarly does not exclude

6

circumstantial evidence. Instead, the statute mentions only "evidence of an offense" which "is in a foreign country." [ECF No. 141, p. 3].

The tolling calculations urged by the Government are outlined it its opposition memorandum: the statute of limitations was suspended for the 119-day period between October 13, 2017 (when the official request was made) and February 9, 2018[2] (when the government received a response from Panama). Thus, the Government concludes, because the indictment was filed less than five years and 119 days after the money laundering conduct occurred, it is timely.[3]

---

[2] Although the letter from Panama with the documents is dated January 2, 2018, OIA did not receive the results from Panama until February 9, 2019. The Government contends that the February 9, 2018 date is the one to use for the calculation but then explains that the money laundering charge would *still* be timely even if the January 2, 2018 date were to be used. If the earlier January date were used instead of February 9, then, the Government notes, there would have been 81 days of tolling -- and the statute of limitations would have expired on May 19, 2018, *after* the indictment was filed on April 19, 2018.

[3] Chatburn does not argue that the similar charge in the superseding indictment is time barred because the superseding charge was filed on December 13, 2018 [ECF No. 105], almost eight months after the charge was included in the initial April 19, 2018 indictment. Such an argument would have been unsuccessful. *See United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990) ("A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges."); *see also United States v. Muteke*, 718 Fed. App'x 854, 857 (11th Cir. 2017) (affirming conviction and noting that the superseding indictment, though filed outside of the limitations period, was saved from dismissal because the allegations and charges in the superseding indictment "were substantially the same as those in the original indictment").

### III. Applicable Legal Standards and Analysis

All parties agree that the statute of limitations for the money laundering charge at issue is five years.

Pursuant to 18 U.S.C. § 3292, however, the government may seek a court order that suspends the statute of limitations during the pendency of an official request for evidence to a foreign country up to three years.

Section 3292 of Title 18 provides, in relevant part:

(a) (1) Upon application of the United States, filed before return of an indictment, indicating that **evidence of an offense is in a foreign country**, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an **official request** has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that **such evidence** is, or was, in such foreign country.

\* \* \* \*

(b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes **final action** on the request.

(c) The total of all periods of suspension under this section with respect to an offense—

(1) shall not exceed three years; and

(2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

18 U.S.C. § 3292 (emphasis added).

And, further:

> A plain reading of § 3292 demonstrates that a district court's decision to suspend the running of a statute of limitations is limited to two considerations: 1) whether an official request was made; and 2) whether that official request was made for evidence that reasonably appears to be in the country to which the request was made. If both those considerations are met, the statute of limitations "shall" be suspended.

*United States v. Broughton*, 689 F.3d 1260, 1275 (11th Cir. 2012).

As defined by § 3292, a request qualifies as an "official request" if it is "a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." 18 U.S.C § 3292(d). The Government's request to Panama under the UNCAC meets this standard because it qualifies as "a request under a treaty or convention." *See* 18 U.S.C § 3292(d).

The FBI special agent's declaration stating the extent of the investigation into offenses, including money laundering, and affirming the need for certain evidence from Panama satisfied the requirement under § 3292(a)(1) that it "reasonably appears, or reasonably appeared at the time the request was made, that such evidence is or was in a foreign country." *See Broughton*, 689 F.3d at 1274 (holding that a sworn declaration from an Assistant United States Attorney regarding the extent of the investigation and the need

9

for the discovery of certain information from the foreign country satisfied the second requirement of § 3292).

Thus, the Undersigned concludes that the district court correctly determined by a preponderance of the evidence that the Government had officially requested evidence of an offense that reasonably appeared to be located in Panama. The agent's declaration and the Government's official request to Panama provided the district court with more than an ample basis to make those determinations. The declaration is not too vague or conclusory.

In addition, the FBI agent's declaration also explained that the Government had not yet received all of the requested evidence from Panama, which is sufficient to demonstrate that Panama had not taken "final action" on the request. *See United States v. Trainor*, 376 F.3d 1325, 1335 (11th Cir. 2004) (stating that a sworn declaration from an FBI agent "undoubtedly would have provided a sufficient evidentiary basis for the tolling order").[4]

Chatburn's argument that the Government did not need the Panamanian records because it already had sufficient evidence of the offense is inconsistent with applicable

---

[4] Section 3292 does not require evidence to have been *received* in order to suspend the statute of limitations. To the contrary, § 3292 provides that the period of suspension "shall not exceed three years" if the evidence has not been received by that time. 18 U.S.C. § 3292(c)(1).

10

law and is therefore rejected. *Broughton*, 698 F.3d at 1275 (finding § 3292 requires only that the foreign evidence be evidence of an offense); *see also United States v. Kachkar*, No. 16-20595-CR, 2018 WL 6933159, at *3 (S.D. Fla. Dec. 19, 2018) (citation omitted) ("[U]nder Eleventh Circuit case law, it is immaterial for the validity of a Section 3292 order that 'none of the evidence requested or obtained by the Government was needed at trial.'"); *United States v. Benscher*, No. 615CR221ORL37DAB, 2016 WL 279398, at *5 (M.D. Fla. Jan. 22, 2016) (rejecting the defendant's "arguments that § 3292 tolling is contingent on showing that the foreign evidence sought is 'necessary' and that the Government's § 3292 tolling requests were made in 'good faith' [because] . . . the Court is not persuaded that the Eleventh Circuit would engraft 'necessary evidence' or 'good faith' requirements on § 3292").

At the hearing, Chatburn's counsel conceded that § 3292 is not limited to only direct evidence and does not exclude circumstantial evidence. She also conceded that she was not aware of any legal authority which would support the notion that circumstantial evidence was somehow excluded from the type of evidence the Government would be entitled to seek under § 3292 in order to toll the statute of limitations. In response to further questioning, she clarified her position: Chatburn was not arguing that circumstantial evidence could never be used to toll the statute of limitations; he was simply arguing that the circumstantial evidence at issue here did not comfortably fit in

the statutory category of "evidence of an offense." The Undersigned disagrees and accepts the Government's theory that circumstantial evidence of the money laundering is a permissible ground on which to seek documents in Panama concerning a Cayman Islands-United States wire transfer.

IV. **Conclusion**

The Undersigned **respectfully recommends** that Judge Cooke **deny** Chatburn's motion to dismiss Count 6. The Government timely filed the money laundering charge because the § 3292 Order effectively tolled the five-year statute of limitations.[5]

V. **Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other

---

[5] At the hearing, Chatburn did not argue his position (asserted in his written motion) that an evidentiary hearing is necessary. Regardless of whether the facts had been in dispute (e.g., when Chatburn filed his motion), the facts are no longer in dispute and the Undersigned's decision is a legal one, based on an interpretation of the statute and the applicability of case law authority. Therefore, the Undersigned determines that an evidentiary hearing is not required. *See United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984) (holding that "where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence"); *United States v. Diaz*, No. 2:17-CR-31, 2018 WL 1003751, at *1 (S.D. Miss. Feb. 21, 2018) (rejecting allegations that Government violated Mississippi's No-Contact Rule without evidentiary hearing because there were no factual disputes that needed to be resolved); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998).

party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, Miami, Florida, on June 28, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record

13