UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20312

UNITED STATES OF AMERICA

vs.

FRANK ROBERTO CHATBURN RIPALDA,

    Defendant.
_____/

**FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA**

    The United States Department of Justice, Criminal Division, Fraud Section and Money Laundering and Asset Recovery Section, (collectively, "the government"), and the Defendant, Frank Roberto Chatburn Ripalda ("the defendant") stipulate and agree that the information stated herein is true and accurate and a sufficient basis for the defendant's plea of guilty to Count Two of the superseding indictment in this case, which charges him with conspiracy to launder money in violation of Title 18, United States Code, Section 1956(h).

    The defendant, who was a dual United States and Ecuadorian citizen and resident of Miami, Florida during the time period alleged in the Superseding Indictment, provided financial services to several clients, including Ramiro Andres Luque Flores ("Luque") (charged elsewhere), an Argentinean businessman, and several Ecuadorian government officials, including Arturo Escobar Dominguez ("Escobar") (charged elsewhere), Foreign Official 1, and Foreign Official 2, the identities of whom are known to the government and the defendant.

    Between in or around 2013 and in or around 2015, the defendant knowingly and willfully conspired with Luque and others to make corrupt payments of at least $2,970,080 for the benefit of officials of the state-owned and state-controlled oil company of the Republic of Ecuador,

Empresa Pública de Hidrocarburos del Ecuador ("PetroEcuador"), including Foreign Official 1 and Foreign Official 3, in order to obtain an improper advantage and retain contracts for Luque's company ("the illegal bribery scheme"). The defendant facilitated bribe payments through the use of the mails and means and instrumentalities of interstate commerce, including by making U.S.-dollar denominated payments to bank accounts in Miami, Florida and elsewhere, for the benefit of then-PetroEcuador officials.

Being a participant in the bribery scheme, the defendant also knowingly and willfully conspired with others to transfer funds from bank accounts located outside the United States to and through bank accounts located in the United States with the intent to promote the carrying on of the illegal bribery scheme. For example, the defendant caused one such payment of $700,000 to be made on or about February 27, 2013 from a Cayman Islands bank account under the defendant's control to a U.S. bank account held by a company in Miami, Florida for the benefit of another PetroEcuador official, Marcelo Reyes Lopez (charged elsewhere). The defendant further caused another such payment of approximately $620,000 to be made on or about May 8, 2014 from a bank account in Panama to a bank account in the United States in the name of a law firm based in Miami, Florida for the benefit of Foreign Official 3.

From in or around 2013 to in or around 2018, the defendant also knowingly and willfully conspired with others to conduct financial transactions in interstate and foreign commerce that were designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds of unlawful activity, namely proceeds of the illegal bribery scheme in which Chatburn and Luque had engaged. The defendant and his co-conspirators, among other things, conducted transactions through the use of shell companies and bank accounts in, among other countries, Panama, the Cayman Islands, Curacao, Switzerland, and the United States. For example, in an

effort to develop illegal business with PetroEcuador officials and assist them in concealing bribe payments, the defendant set up Panamanian shell companies with bank accounts in Switzerland to conceal the receipt of bribe payments for two then-PetroEcuador officials, Escobar and Foreign Official 1. The defendant and his co-conspirators also created fake invoices and contracts which they presented to financial institutions to conceal the nature, location, source, ownership, and control of the proceeds of the illegal bribery scheme in connection with financial transactions conducted during the conspiracy.

The defendant also used accounts in the name of intermediaries to conduct financial transactions involving the proceeds of the illegal bribery scheme in order to provide those proceeds to Luque in Miami, Florida while concealing Luque's connection to the funds. For example, in or around September 2016, the defendant caused approximately $2.8 million of proceeds of the illegal bribery scheme to be sent from an account in the name of a shell company based in Curacao to an account in the United States in the name of an entity affiliated with his employer. From there, the defendant and others subsequently caused approximately $974,000 to be wire transferred from that entity to an account in the name of co-conspirator Jose Larrea (charged elsewhere), who subsequently conducted wire transfers of those funds to other bank accounts in the United States, as designated by Luque. The purpose of these transactions was to conceal and disguise the nature, location, source, ownership, and control of the funds, which were proceeds of the illegal bribery scheme.

The defendant profited from his role in the laundering of bribe proceeds by earning fees from Luque for facilitating the illegal transactions.

Moreover, between in or around 2013 and in or around 2015, the defendant knowingly and willfully conspired with Foreign Official 2 and others to conduct financial transactions that were

designed to conceal bribe payments for the benefit of Foreign Official 2 from Odebrecht S.A. (charged elsewhere), a Brazilian construction conglomerate. Specifically, the defendant caused several financial transactions affecting interstate and foreign commerce to be made for the benefit of Foreign Official 2, while knowing that the payments constituted the proceeds of unlawful activity, namely bribe payments, and were intended to conceal them. The transactions included a U.S. dollar denominated payment of $400,000 from an Odebrecht-related entity with a bank account in Antigua to a Cayman Islands account controlled by the defendant. Less than ten days later on or about April 23, 2014, the defendant, while in Miami, Florida, caused a wire transfer of approximately $340,000 to be sent to a Swiss bank account of a Panamanian corporation beneficially held by Foreign Official 2. The defendant also knowingly and willfully caused a payment of $349,805 to be made on or about September 1, 2015 from a Cayman Islands-based bank account he controlled to a company under his control with a bank account in Miami, Florida, which was intended, at least in part, to conceal the proceeds of an unlawful bribe payment for the benefit of Foreign Official 2.

      The defendant, knowing that his conduct was wrong and unlawful, conspired with others to conduct, conducted and attempted to conduct various financial transactions involving interstate and foreign commerce using U.S. shell company bank accounts, knowing that the property involved in the transactions represented the proceeds of the illegal bribery scheme, and acting with the intent to conceal and disguise the true nature, location, source, ownership, and control of the proceeds of the illegal bribery scheme. The defendant, knowing that his conduct was wrong and unlawful, also caused financial transactions from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of the illegal bribery scheme.

Beginning in or around and between 2005 and 2007, several individuals, whose identities are known to the United States and the defendant, began operating three businesses (whose names are also known by the defendant and the government): (a) Financial Services Firm; (b) a luxury real estate development company in South Florida; and (c) several private investment funds held in the Cayman Islands. These three businesses, though separate, were connected in that Financial Services Firm sold shares of the Cayman Islands investment funds for the ostensible purpose of developing the real estate projects in South Florida. The defendant was a financial advisor for Financial Services Firm and, by at least in or around 2014, was an approximately 8% shareholder.

Shortly after the three businesses were formed, in or around 2007, the real estate projects began suffering financial difficulties that worsened over the next decade. Despite knowing of the failing financial health, and eventual insolvency, of the real estate projects, the co-conspirator owners and certain Financial Services Firm employees, including the defendant, continued to raise new debt, purportedly for the development of real estate, by: (a) aggressively selling the worthless funds' shares; (b) making false and fraudulent statements to auditors, clients and others, regarding the financial health of these investments; and (c) omitting material information regarding the conflict of interest among the various business lines, among other things.

By the end of 2015, the beneficiary real estate project was at least approximately $200 million in debt and remained mostly undeveloped and unsold. The investment funds that were being raised were instead fraudulently used by the co-conspirators, including at the direction of the defendant: (a) to repay older debts; (b) to capitalize the consistently unprofitable businesses; and (c) for the co-conspirators own personal use and benefit. To perpetuate the investment fraud scheme, the co-conspirators, at the direction of the defendant and others, would at times make

interest payments to clients to deceive them into believing their investments were generating returns, when in fact their money was not invested in real estate and was not generating returns.

In furtherance of the conspiracy and to effect the illegal objects thereof, the defendant knowingly and fraudulently raised funds from other Financial Services Firm clients to repay his client, Luque. For example:

    a. On or about November 23, 2016, at the defendant's direction, Gustavo Trujillo ("Trujillo"), a Financial Services Firm employee, sent approximately $353,000 belonging to other Financial Services Firm clients via wire in interstate commerce, including to an account in the Southern District of Florida, to repay defendant's client, Luque, some of his PetroEcuador contract proceeds; and,

    b. On or about December 19, 2016, at the Defendant's direction, Trujillo sent approximately $134,000 of other Financial Services Firm clients via wire in interstate commerce, including to an account in the Southern District of Florida, to repay defendant's client, Luque, some of his PetroEcuador contract proceeds.

ROBERT A. ZINK
CHIEF, FRAUD SECTION

Date: 10/11/19

By: *[signature]*
BRIAN YOUNG
DAVID FUHR
KATHERINE RAUT
TRIAL ATTORNEYS

DEBORAH L. CONNOR
CHIEF, MONEY LAUNDERING & ASSET RECOVERY SECTION

Date: 10/11/19

By: *[signature]*
RANDALL WARDEN
MARY ANN MCCARTHY
TRIAL ATTORNEYS

## ATTORNEY'S ACKNOWLEDGMENT

I acknowledge by my signature that I have read and discussed the statement of facts with my client.

Date: 10·11·19

*[signature]*
HOWARD SREBNICK, ESQ.
JACKIE PERCZEK, ESQ.
ATTORNEY FOR DEFENDANT CHATBURN

## DEFENDANT'S ACKNOWLEDGMENT

I have read and discussed the statement of facts with my attorney. I agree and acknowldge by my signature that this statement of facts is correct.

Date: 10/11/19

*[signature]*
FRANK ROBERTO CHATBURN RIPALDA
DEFENDANT

7